*Formatted for Electronic Distribution*                               *Not for Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

_____

In re:

    **Winter Manufacturing, Inc.**          **Chapter 7 Case**
           **Debtor.**                 **# 09-10676**

_____

Filed & Entered
On Docket
September 29, 2011

*Appearances:*

*Heather Z. Cooper, Esq.*                     *Christopher T. Hilson, Esq.*
*Rutland, Vermont*                            *James F. Carroll, Esq.*
*For F. Douglas Anderson, Lynn Bailey,*       *Exeter, New Hampshire*
*David Gauthier, & James Kirschner,*          *For Elizabeth Callahan & Daniel Howard*


*Thomas C. Bixby, Esq.*                       *John R. Canney III, Esq.*
*Rutland, Vermont*                            *Rutland, Vermont*
*For Christine & Michael Spangler*            *Chapter 7 Trustee*


*James B. Anderson, Esq.*
*Rutland, Vermont*
*For TD Bank, N.A.*


**MEMORANDUM OF DECISION**
**GRANTING IN PART AND DENYING IN PART**
**MOTION FOR EARLY DISBURSEMENT TO PRE-PETITION EMPLOYEES,**
**OVERRULING IN PART AND SUSTAINING IN PART REMAINING OBJECTIONS TO MOTION,**
**AND FIXING AMOUNT OF ALLOWED CLAIMS**

    The issue presented is whether seven claimants are entitled to early payment of the claims they

filed in the instant case for pre-petition wages and benefits.  The chapter 7 trustee and two creditors filed

objections to the claimants' claims and motion for early payment of their claims.  The Court previously

issued an order partially overruling the objections of the two creditors, and reserving decision on the

remaining objections.  For the reasons set forth below, the Court overrules in part and sustains in part the

remaining objections to the claims and motion.

**JURISDICTION**

    This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334 and

declares it to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PROCEDURAL BACKGROUND

Winter Manufacturing, Inc. (the "Debtor") filed a voluntary chapter 7 petition on June 10, 2009 (see Findings of Fact ¶ 6, infra).  Just over a year later, on July 20, 2010, John L. Kennedy, Mark Brosseau, F. Douglas Anderson, James Kirschner, David Gauthier, Teresa Winter, and Lynn Bailey (together the "Claimants") filed a motion requesting allowance and early payment of the claims they filed in this instant case for pre-petition wages and benefits (the "Motion") (doc. # 81).  The chapter 7 trustee (the "Trustee"), Christine and Michael Spangler (the "Spanglers"), and Elizabeth Callahan and Daniel Howard (the "Howards") filed objections to the Motion that included objections to the claims (doc. ## 86, 87, 89, 101, 102, 103).  The Court held an evidentiary hearing on the matter on March 31, 2011.  The Howards filed a request to be excused from appearing at trial and allowed to rest upon the papers and the evidence elicited at trial, which was granted (doc. # 124).  The parties filed proposed findings of fact and conclusions of law (doc. ## 131, 133, 140; see also doc. ## 141, 142), and the Court took the matter under advisement on May 18, 2011.

On September 3, 2011, the Court issued an Order (doc. # 144) overruling the objections of the Howards and the Spanglers to the extent those objections relied upon the doctrine of equitable subordination or upon an allegation that the claims of Lynn Bailey, James Kirschner, David Gauthier, and F. Douglas Anderson sought compensation outside the 180-day period of 11 U.S.C. § 507(a)(4).[1]  In that order, the Court indicated that the following remaining objections would be addressed by separate order: the Trustee's objection to the claims and Motion, including the issue of whether, during May 2009, the Claimants were working for the Debtor; the Howards' joinder in the Trustee's objection; the Spanglers' objection to the Motion with respect to Mr. Gauthier's claim on the basis that the Debtor's business was not operating during the relevant time period; and the Howards' objection to the claims and Motion on the basis that the claims lacked supporting documentation, were not entitled to priority status, and exceeded the dollar limit for such claims under § 507(a)(4) (see doc. # 144).

## FINDINGS OF FACT

Based upon the record in this case, including the parties' proposed findings of fact (doc. ## 131, 133, 140; see also doc. ## 141, 142), and the arguments and testimony presented and evidence admitted at the March 31st evidentiary hearing, the Court makes the following findings of fact:

1.     The Debtor's business, including its manufacturing facility and central offices, was located at 74 Glen Orne Drive in Burlington, Vermont.

---

[1]  All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

2.    The Debtor did not own the premises; they were owned by a real estate trust.

3.    On May 8, 2009, the Debtor executed an agreement in favor of its secured lender, TD Bank, N.A. f/k/a TD Banknorth, N.A. f/k/a Banknorth, N.A., a National Association ("TD Bank") for the voluntary surrender of collateral (the "Surrender Agreement").

4.    On the date of the Surrender Agreement, May 8, 2009, the Claimants were employees of the Debtor.

5.    On June 4, 2009, TD Bank and World Panel Systems, LLC ("World Panel") entered into a sale agreement of the assets of the Debtor (the "Sale Agreement").

6.    On June 10, 2009, the Debtor filed the instant chapter 7 bankruptcy case.

7.    On August 14, 2009, Mark Brosseau filed a proof of claim (claim # 25-1), asserting a claim in the amount of $4,153.71.

8.    On October 1, 2009, Teresa Winter filed a proof of claim (claim # 48-1), asserting a priority claim in the amount of $2,327.11.

9.    On October 8, 2009, John L. Kennedy filed a proof of claim (claim # 55-1), asserting a priority claim in the amount of $52.60.

10.   On December 27, 2010, Lynn Bailey filed an amended proof of claim (claim # 20-2), asserting a priority claim in the amount of $3,628.34 for unpaid wages, holiday pay, and vacation for services performed from May 3, 2009 through May 31, 2009.

11.   On December 27, 2010, James Kirschner filed an amended proof of claim (claim # 24-2), asserting a priority claim in the amount of $4,737.54 for unpaid wages, overtime pay, holiday pay, and vacation pay for services performed from May 10, 2009 through May 31, 2009.

12.   On December 27, 2010, David Gauthier filed an amended proof of claim (claim # 46-2), asserting a priority claim in the amount of $8,163.14 for unpaid wages, overtime pay, holiday pay, and vacation pay for services performed from May 3, 2009 through May 31, 2009, and asserting a general unsecured claim in the amount of $12,312.21, for a total claim of $20,475.35.

13.   On December 27, 2010, F. Douglas Anderson filed an amended proof of claim (claim # 62-2), asserting a priority claim in the amount of $4,172.18 for unpaid wages, overtime pay, holiday pay, and vacation pay for services performed from May 3, 2009 through May 31, 2009, and asserting a general unsecured claim in the amount of $5,019.71, for a total claim of $9,191.89.

### DISCUSSION

### The Howards' Objection

The Howards objected to the Motion on the grounds that the claims lack supporting

documentation, fail to designate any grounds for priority status, and do not appear to be due priority status because, given the documentation provided, the Claimants are not owed wages or contributions to an employee benefit plan, or the Claimants are claiming far in excess of the § 507(a)(4) cap (doc. # 89). The Howards subsequently specified that they objected only to the claims of Lynn Bailey, James Kirschner, David Gauthier, and F. Douglas Anderson (doc. # 103, ¶ 1).

On December 27, 2010, Lynn Bailey, James Kirschner, David Gauthier, and F. Douglas Anderson filed amended proofs of claim (claim ## 20-2, 24-2, 46-2, 62-2), which were admitted into evidence at the evidentiary hearing as Exhibits 1, 2, 3, and 4 (Exs. 1–4). Each of these creditors attached draft pay stubs to their amended proof of claim, showing gross wages claimed, deductions required, and net wages due (as specified below), and each of them set forth on the proof of claim form a figure that was less than the gross amount of wages due for the period, according to the attached documentation. A trustee is required to comply with state and federal law, which includes paying withholding taxes on allowed wage claims. See 28 U.S.C. §§ 959(b), 960(a).[2] Thus, a trustee who pays wage claims from a bankruptcy estate must disburse the gross amount of wages, withholding all taxes and fees due.

### *Lynn Bailey's Claim*

Lynn Bailey indicated on her amended proof of claim that the basis for her claim is services performed during the period encompassing the pay period ending on May 3, 2009 through the pay period ending on May 31, 2009, and asserted that her claim of $3,628.34 is entitled to priority status as wages, salaries, or commissions up to $11,725 under § 507(a)(4) and as contributions to an employee benefit plan under § 507(a)(5) (claim # 20-2, p. 1) (see Findings of Fact ¶ 10, supra). Ms. Bailey attached as supporting documentation draft check stubs for the period in question for regular wages, holiday pay, and vacation pay (claim # 20-2, pp. 2–3), showing the following:

| Lynn Bailey | Period Ending | Gross Earnings and Vacation Pay | Net Earnings and Vacation Pay |
|---|---|---|---|
| | 5/3/09 | $837.00 | $621.97 |
| | 5/10/09 | $837.00 | $642.42 |

---

[2]  28 U.S.C. § 959 provides, in relevant part, that a trustee:

> . . . shall manage and operate the property in his possession as such trustee . . . according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

28 U.S.C. § 959(b).  28 U.S.C. § 960 provides, in relevant part, that:

> Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

28 U.S.C. § 960(a).

| | 5/17/09 | $761.63 | $586.83 |
|---|---|---|---|
| | 5/24/09 | $673.88 | $522.12 |
| | 5/31/09 | $1,444.50 ($720.00 + $724.50)[3] | $1,129.78 ($570.34 + $559.44) |
| | **Total:** | $4,554.01 | $3,503.12 |

The documentation attached to Ms. Bailey's proof of claim supports a priority claim in the amount of the $4,554.01 for gross wages earned within 180 days before the date of the filing of the petition. Accordingly, the Howards' objection as to Lynn Bailey's claim (claim # 20-2) is overruled.

*James Kirschner's Claim*

James Kirschner stated on his amended proof of claim that the basis for his claim is wages, salaries, and compensation for the pay period ending on May 3, 2009 through the pay period ending on May 31, 2009 and asserted his claim of $4,737.54 is entitled to priority status as wages, salaries, or commissions up to $11,725 under § 507(a)(4) and as contributions to an employee benefit plan under § 507(a)(5) (claim # 24-2, p. 1) (see Findings of Fact ¶ 11, supra). Mr. Kirschner attached as supporting documentation draft check stubs for the period in question for regular wages, overtime pay, holiday pay, and vacation pay (claim # 24-2, pp. 2–3). Mr. Kirschner credibly testified at the evidentiary hearing that he did not receive payment for the draft check stubs attached to his proof of claim. The draft pay stubs show the following:

| James Kirschner | Period Ending | Gross Earnings and Vacation Pay | Net Earnings and Vacation Pay |
|---|---|---|---|
| | 5/10/09 | $937.25 | $772.02 |
| | 5/17/09 | $920.00 | $759.30 |
| | 5/24/09 | $920.00 | $759.30 |
| | 5/31/09 | $1,932.00 ($920.00 + $1,012.00) | $1,571.48 ($744.32 + $827.16) |
| | **Total:** | $4,709.25 | $3,862.10 |

Mr. Kirschner filed a priority claim in the amount of $4,737.54 (claim # 24-2, p. 1). However, the attached supporting documentation shows that he is only entitled to gross earnings in the amount of $4,709.25 for the time period in question (claim # 24-2, pp. 2–3). Accordingly, the Howards' objection as to James Kirschner's claim is sustained to the extent of $28.29 and otherwise overruled, and Mr. Kirschner's claim (claim # 24-2) is disallowed as a priority claim in the amount of $28.29 (which will instead be allowed as a general unsecured claim). Mr. Kirschner's motion for early disbursement of his

---

[3] Claimants Lynn Bailey, James Kirschner, David Gauthier, and F. Douglas Anderson each included a separate draft pay stub for the period ending on May 31, 2009, which appears to include solely vacation pay and to assert a claim for all vacation pay each Claimant deems to be due for the year.

allowed priority claim is denied as to the amount of $28.29.[4]

### *David Gauthier's Claim*

David Gauthier indicated on his amended proof of claim that the basis for his claim is services performed, and wages, salaries, and compensation earned, for the pay period ending on May 3, 2009 through the pay period ending on May 31, 2009, and asserted that $8,163.14 of his $20,475.35 total claim is entitled to priority status as wages, salaries, or commissions up to $11,725 under § 507(a)(4) and as contributions to an employee benefit plan under § 507(a)(5) (claim # 46-2, p. 1) (see Findings of Fact ¶ 12, supra).  Mr. Gauthier attached as supporting documentation, inter alia, draft check stubs for the period in question for regular wages, holiday pay, and vacation pay (doc. # 46-2, pp. 2–3).[5]  Mr. Gauthier credibly testified at the evidentiary hearing that the attached draft payroll check stubs had been run, held onto, and not cashed, and that they accurately reflected the sums due to him for the period encompassing the pay period ending May 3, 2009 through the pay period ending May 31, 2009.

| David Gauthier | Period Ending | Gross Earnings and Vacation Pay | Net Earnings and Vacation Pay |
|---|---|---|---|
| | 5/3/09 | $1,923.08 | $1,349.16 *($1,923.08 - $573.92)* |
| | 5/10/09 | $1,923.08 | $1,479.55 |
| | 5/17/09 | $1,923.08 | $1,479.55 *($1,923.08 - $443.53)* |
| | 5/24/09 | $1,923.08 | $1,479.55 *($1,923.08 - $443.53)* |
| | 5/31/09 | $2,211.55 *($1,923.09 + $288.46)* | $1,745.96 *(($1,923.09 - $443.53) + $266.40)* |
| | **Total:** | $9,903.87 | $7,533.77 |

Although Mr. Gauthier filed a priority claim in the amount of $8,163.14 (claim # 46-2, p. 1), the supporting documentation attached to his proof of claim appears to show that he is entitled to gross earnings in the amount of $9,903.87 for the period encompassing the pay period ending on May 3, 2009 through the pay period ending on May 31, 2009 (claim # 46-2, pp. 2–3).  The documentation attached to

---

[4]  In his proof of claim, Mr. Kirschner sought payment for 19.5 days of vacation pay plus 1 day of holiday pay, for a total of 20.5 days (see claim # 24-2, pp. 2–3).  Mr. Kirschner admitted at the evidentiary hearing that he was entitled to only 20 days of vacation pay per year, plus 2 floating holidays, and that he could carry over 5 days of vacation from the previous year, for a total of 27 vacation days and holidays.  The spreadsheet admitted into evidence as Exhibit 23 listed his vacation days as 22 for 2009 with a carryover of 7 days for 2008, for a total of 29 days rather than the correct total of 27 (based on a maximum carryover of 5 days).  Mr. Kirschner testified that he took 6.5 days off in 2009 prior to May 2009, which, subtracted from his 27 vacation days and holidays, would have left 20.5 days available in May 2009.  Thus, the erroneous 29-day figure listed in Exhibit 23 did not affect the amount Mr. Kirschner sought in his amended proof of claim, or the amount allowed in this decision.

[5]  Mr. Gauthier also attached as supporting documentation a copy of his employment agreement and a number of expense

the amended proof of claim supports a priority claim in the amount of $9,903.87 for gross wages earned

during the subject time period, all of which is during the 180 days prior to the bankruptcy filing.

Accordingly, the Howards' objection as to David Gauthier's claim (claim # 46-2) is overruled.

### *F. Douglas Anderson's Claim*

F. Douglas Anderson indicated on his amended proof of claim that the basis for his claim is

services performed, wages, salaries, and compensation for the period f encompassing the pay period

ending on May 3, 2009 through the pay period ending on May 31, 2009, and asserted that $4,172.18 of his

$9,191.89 total claim is entitled to priority status as wages, salaries, or commissions up to $11,725 under

§ 507(a)(4) and as contributions to an employee benefit plan under § 507(a)(5) (claim # 62-2, p. 1) (see

Findings of Fact ¶ 13, supra).  Mr. Anderson attached as supporting documentation, inter alia, draft check

stubs for the pay periods in question showing regular wages, holiday pay, and vacation pay (doc. # 62-2,

pp. 2–3).[6]  Mr. Anderson credibly testified at the evidentiary hearing that he did not actually receive

payment for the amounts shown on the attached draft check stubs.  They show the following:

| F. Douglas Anderson | Period Ending | Gross Earnings and Vacation Pay | Net Earnings and Vacation Pay |
|---|---|---|---|
| | 5/3/09 | $980.76 | $696.39 |
| | 5/10/09 | $980.76 | $709.69 |
| | 5/17/09 | $612.98 | $477.72 |
| | 5/24/09 | $490.38 | $387.30 |
| | 5/31/09 | $1,838.93 ($858.16 + $980.77) | $1,345.64 ($635.94 + $709.70) |
| | **Total:** | $4,903.81 | $3,616.74 |

Although Mr. Anderson filed an amended proof of claim showing a priority claim in the amount of

$4,172.18 (claim # 62-2, p. 1), the attached supporting documentation appears to demonstrate that he is

entitled to gross earnings in the amount of $4,903.81 for the pay period ending on May 3, 2009 through

the pay period ending on May 31, 2009 (claim # 62-2, pp. 2–3).  The attached documentation supports a

priority claim in the amount of $4,903.81 for gross earnings.  Accordingly, the Howards' objection as to

F. Douglas Anderson's claim # 62-2 is overruled.[7]

### **The Trustee's Objection to Claims Based upon Lack of Supporting Documentation**

The Trustee initially objected to the claims and Motion on the grounds that the claims lacked

---

reports (see claim # 46-2, pp. 4–24), which are not relevant to the instant objection.

[6]  Mr. Anderson also attached as supporting documentation a number of expense reports (see claim # 62-2, pp. 4–16), which are not relevant to the instant objection.

[7]  The Court will allow Ms. Bailey, Mr. Gauthier, and Mr. Anderson an opportunity to further amend their claims to the extent that the figures on the proofs of claim were derived in error and fail to reflect the gross wages supported by the pay stubs.

documentation sufficient to support priority status (doc. # 86).[8]  The Court ruled above on an identical

objection by the Howards as it pertained to the claims of Claimants Lynn Bailey, James Kirschner, David

Gauthier, and F. Douglas Anderson.  That ruling disposes of the Trustee's objection on this basis, as to

those claims.  The Court now addresses the Trustee's objection as it relates to the claims of the remaining

three Claimants, Mark Brosseau, Teresa Winter, and John L. Kennedy.

### *Mark Brosseau's Claim*

On August 14, 2009, Mark Brosseau filed a proof of claim (claim # 25-1).  It states that the basis

for his $4,153.71 claim is payroll and expenses, but does not specify any amount entitled to priority status

or the basis for priority status (claim # 25-1, p. 1) (see Findings of Fact ¶ 7, supra).  Mr. Brosseau attached

to his proof of claim a copy of the notice to file claims issued by the Court (claim # 25-1, p. 2), but did not

attach any supporting documentation.  He has not filed an amended proof of claim.  Accordingly, the

Trustee's objection as to Mark Brosseau's claim is sustained, and Mr. Brosseau's claim (claim # 25-1) is

disallowed as a priority claim and allowed as a general unsecured claim.  Mr. Brosseau's motion for early

disbursement of his priority claim is denied.

### *Teresa Winter's Claim*

On October 1, 2009, Teresa Winter filed a proof of claim (claim # 48-1) indicating that the basis

for her claim is wages, licensing fees, expenses, and her 401K, and asserting that $2,327.11 of her claim is

entitled to priority status as wages, salaries, or commissions up to $11,725 under § 507(a)(4) and as

contributions to an employee benefit plan under § 507(a)(5) (claim # 48-1, p. 1) (see Findings of Fact ¶ 8,

supra).[9]  Ms. Winter attached as supporting documentation, inter alia, a spreadsheet titled "employee

401K owed as of 4/23/09," with the amounts listed for Ms. Winter as $23.20 for the periods ending on

April 23, 2009, April 30, 2009, and May 7, 2009, for a total 401K amount due of $69.60, and a

spreadsheet titled "employee wages owed as of 5/11/09," with the amounts listed for Ms. Winter as

$443.95 for the period ending on May 7, 2009, and $453.39 for the periods ending on May 14, 2009, May

21, 2009, May 28, 2009, and June 4, 2009, for total wages due of $2,257.51 (claim # 48-1, pp. 2, 4),[10] for

a total claim in the amount of $2,327.11.  The documentation attached to Ms. Winter's proof of claim

---

[8]  The Trustee's initial objection also raised the argument of equitable subordination (see doc. # 86), but the Trustee has not
articulated any basis for this position and hence is deemed to have abandoned this argument (see doc. # 133, p. 9–10, ¶ 50, p.
19, ¶ 15).  Additionally, although the Trustee's initial objection raised the issue of preferential payments possibly having been
made with respect to the Claimants (see doc. # 86), the Trustee did not brief the issue or raise it at trial.  Thus, this argument is
likewise deemed to be abandoned.

[9]  Ms. Winter filed three other proofs of claim (claim ## 49-1, 50-1, 51-1), which are not relevant to the Motion.

[10]  Ms. Winter also attaches as supporting documentation a spreadsheet titled "License Fees owed to Teresa Winter" (see claim
# 48-1, p. 3), which is not relevant to the instant objection.

supports a priority claim in the amount of $2,327.11 earned during the 180 days prior to the filing of the petition, under § 507(a)(4). Therefore, the Trustee's objection as to Teresa Winter's claim (claim # 48-1), on the basis of lack of supporting documentation, is overruled.

### *John L. Kennedy's Claim*

On October 8, 2009, John L. Kennedy filed a proof of claim (claim # 55-1) that stated the basis for his claim is the Debtor's failure to contribute to his 401K the money the Debtor deducted from his paycheck for this purpose, and asserted that his claim of $52.60 is entitled to priority status as contributions due to an employee benefit plan under § 507(a)(5) (claim # 55-1, p. 1) (see Findings of Fact ¶ 9, supra). Mr. Kennedy did not attach any supporting documentation, and has not filed an amended proof of claim. Accordingly, the Trustee's objection to John L. Kennedy's claim is sustained, and Mr. Kennedy's claim (claim # 55-1) is disallowed as a priority claim; it is allowed as a general unsecured claim. Mr. Kennedy's motion for early disbursement of his priority claim is denied.

### **The Trustee's Objection as to Mr. Gauthier's Vacation Pay**

In his supplemental objection, the Trustee objected to the vacation pay portion of Mr. Gauthier's claim, and the Motion to pay his claim, on the ground that Mr. Gauthier's "employment contract required reasonable advance notice for termination" for vacation (doc. # 101, p. 2).[11] Based upon the Trustee's arguments at the evidentiary hearing and his proposed findings of fact and conclusions of law, the Court construes the Trustee's objection to be that Mr. Gauthier (i) is bound by his employment contract with the Debtor, (ii) is not entitled to compensation for vacation time pursuant to the Debtor's employee manual, as there is no specific adoption of this vacation policy in his employment contract, and (iii) does not have a valid claim for any vacation pay from the Debtor (see doc. # 133, p. 8, ¶ 40).

Mr. Gauthier testified at the evidentiary hearing that he had 0.75 vacation days due to him as of the end of May 2009. This figure was corroborated by a spreadsheet admitted into evidence showing the 2009 vacation time for the Debtor's employees, including Mr. Gauthier, which listed a ".75 payout" at the end of the number of vacation days taken by Mr. Gauthier (Ex. 23, p. 2). Mr. Gauthier testified that it was the Debtor's policy that if an employee was terminated at any time during the year, any unused vacation days would be paid out to the employee, because vacation days accrued as of January 1st each year. The Debtor's employee manual was admitted into evidence as Exhibit 6, and has the following provision: "[v]acation days will be awarded on January 1st of each year for use during that year" (Ex. 6, p. 15).

During his testimony, Mr. Gauthier acknowledged that he had a written employment contract, and

---

[11] The Howards have joined in the Trustee's supplemental objection to the Motion (see doc. # 103, ¶ 2), and thus any discussion and resolution of the Trustee's arguments shall apply equally to the Howards.

that he was the only employee of the Debtor who had one.  Mr. Gauthier's employment agreement with

the Debtor was admitted into evidence as Exhibit 5; it contains the following provision regarding paid

vacation time:

> Annual paid vacation of twenty two days, in addition to holidays as defined in the
> employee handbook, throughout the Term with reasonable advance notice for vacation.
> Employee understands that vacation days requested by the Employee may need to be
> adjusted to insure that adequate management coverage for the Companies is available.

(Ex. 5, ¶ 5(d)).  The Debtor's employee manual provides the following regarding holidays:

> All full time employees are entitled to floating holidays based on the employee's length of
> service as of each January 1st.  All employees will receive one floating holiday day for less
> than 6 month's service and two floating holidays for over six month's service  Floating
> holidays will be treated in the same manner for all purposes as vacation days.

(Ex. 6, p. 15).  Mr. Gauthier's employment agreement made clear it was the total agreement between him

and the Debtor:

> This Agreement contains the entire agreement between the parties concerning the
> employment of the Employee by the Employer.  No modification or waiver of any
> provision shall be effective unless in writing and signed by both the Employer and the
> Employee.

(Ex. 5, ¶ 17).  No written modification or waiver of Mr. Gauthier's employment agreement affecting paid

vacation time was admitted into evidence.

The Trustee's position that Mr. Gauthier is bound by his employment contract with the Debtor,

and is therefore not entitled to any vacation pay, is correct.  This is clear from paragraph 17 of Mr.

Gauthier's employment agreement with the Debtor (see Ex. 5, ¶ 17), and the lack of any written

modification or waiver of the employment agreement affecting paid vacation time.  In order to exercise his

right to vacation time and floating holidays, Mr. Gauthier needed to provide "reasonable advance notice

for vacation" (Ex. 5, ¶ 5(d)).  This provision applies to floating holidays, as well, since they were treated

in the same manner as vacation days (see Ex. 5, ¶ 5(d); see also Ex. 6, p. 15).  Mr. Gauthier presented no

testimony at the hearing that he had complied with the requirement for reasonable advance notice, as set

forth in paragraph 5(d) of his employment agreement.  The only testimony Mr. Gauthier presented to

overcome this aspect of the Trustee's objection was that he believed he was entitled to the same vacation

accrual arrangement as employees covered by the employee handbook, and that he was using some

vacation time during the period in question.  The draft check stubs produced by the Debtor and attached to

his proof of claim (see Ex. 3, pp. 2–3) included amounts for vacation and holiday pay, as follows:

| David Gauthier | Period Ending | Gross Earnings and Vacation Pay | Vacation/Holiday Pay Only |
|---|---|---|---|
|  | 5/3/09 | $1,923.08 | $673.08 |

10

| | | |
|---|---|---|
| 5/10/09 | $1,923.08 | $576.92 |
| 5/17/09 | $1,923.08 | $1,634.62 |
| 5/24/09 | $1,923.08 | $1,442.31 |
| 5/31/09 | $2,211.55 ($1,923.09 + $288.46) | $1,346.16 (($384.62 + $673.08) + $288.46) |
| **Total:** | $9,903.87[12] | $5,673.09 |

Mr. Gauthier appears to be asking the Court to find that these pay stubs establish that the Debtor intended to pay Mr. Gauthier for vacation time during the period in question, and demonstrate that the Debtor found him entitled to vacation pay under the employment agreement.  The record does not support either finding.  The Court therefore sustains the Trustee's objection to the priority status of the vacation and holiday pay portion of Mr. Gauthier's amended proof of claim.  Accordingly, Mr. Gauthier's claim (claim # 46-2) is reduced by $5,673.09; that amount will instead be allowed as a general unsecured claim.

### The Trustee's Objection Based upon the Date the Debtor Ceased Doing Business

The Trustee further objected to the Claimants' claims and Motion on the ground that the claims contain requests for payment of wages and vacation pay for a period subsequent to May 8, 2009, when (i) all assets of the Debtor, other than the BASF litigation, were surrendered to TD Bank, (ii) the Debtor ceased normal business operations, and (iii) the Debtor had the sum of $18,000.00 to pay outstanding ordinary course payroll liabilities (doc. # 101, pp. 1–2).[13]  With respect to the wages and salaries portion of the claims, the Trustee argues that the Claimants could not have worked for the Debtor after May 8, 2009 because the Debtor had no assets or place of business.  With respect to the claim for vacation pay, the Trustee asserts first, that  after the Debtor turned over its assets and ceased normal operations, its employees had no right to vacation pay, and second, that no vacation pay accrued for the Claimants during the period covered by their proofs of claim (doc. # 101, p. 2).

Section 507 of the Bankruptcy Code provides, in relevant part, that:

(a)     The following expenses and claims have priority in the following order:

   (4)     Fourth, allowed unsecured claims, but only to the extent of $ 11,725 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition **or the date of the cessation of the debtor's business, whichever occurs first,** for—

---

[12]  If Mr. Gauthier amended his proof of claim # 46-2 to seek this gross amount of earnings plus vacation pay ($9,903.87) minus the vacation and holiday pay portion ($5,673.09), the Court would allow that proof of claim in the amount of $4,230.78 (see infra).

[13]  At the March 31st evidentiary hearing, Thomas C. Bixby, Esq., appearing on behalf of the Spanglers, indicated in his opening statement that the Spanglers objected to the Motion as to Mr. Gauthier on the basis that the business was not operating during the relevant time period.  This argument is identical to the Trustee's argument, and thus any discussion and resolution of the Trustee's argument shall apply equally to the Spanglers.

(A)      wages, salaries, or commissions, including vacation, severance, and
sick leave pay earned by an individual . . ..

11 U.S.C. § 507(a)(4)(A) (emphasis added).  The unambiguous language of § 507(a)(4) precludes priority

status to wages, salaries and vacations pay earned after the date of cessation of a debtor's business.  See

Davidson Transfer & Storage Co. v. Teamsters Pension Trust Fund, 817 F.2d 1121, 1123 (4th Cir 1987).

In deciding whether there has been a cessation of a debtor's business, "bankruptcy courts are not bound by

legal formalism."  Id. at 1123–24.  "A court may always pierce a paper existence and determine whether a

business has, in fact, discontinued its operations."  Id. at 1124 (citing In re Bodin Apparel, Inc., 46 B.R.

555 (Bankr. S.D.N.Y. 1985), aff'd, 56 B.R. 728 (S.D.N.Y. 1985)).  One test used to determine whether a

debtor has ceased doing business is whether it: 1) has discharged all or substantially all of its employees;

2) has ceased performing its usual work; and 3) continues in business or liquidates.  In re Adcock

Excavating, Inc., 42 B.R. 84, 86–87 (Bankr. N.D. Ill. 1984); see also In re Bodin Apparel, Inc., 56 B.R. at

732.[14]

         Whether the Debtor discharged all or substantially all of its employees is a close call, on the record

before the Court.  It is undisputed that on May 8, 2009, the date of the Surrender Agreement – and the date

the Trustee claims the Debtor ceased doing business – the seven claimants were employees of the Debtor

(see Findings of Fact ¶ 4, supra).  David Gauthier, who was the president of the Debtor, testified that after

May 8, 2009, he continued to work at the facility doing office work (see infra).  Lynn Bailey testified that

she worked for the Debtor as its office manager, and that she continued to work in that same role, and at

the same location, after May 8, 2009.  Ms. Bailey further testified that she prepared the spreadsheet

admitted into evidence as Exhibit 23, which was an ongoing report that started on January 1st of each year

and that was updated weekly (see Ex. 23).  F. Douglas Anderson testified that he worked for the Debtor in

a sales position, and that he continued working in sales during May 2009.  James Kirchner testified that he

worked for the Debtor as an architectural designer and draftsman, his time in the facility ended on May

10, 2009, and his services were on an on-call basis for the rest of the month of May 2009, because he was

taking vacation time that month.  He considered himself an employee through the end of May,

notwithstanding the execution of the Surrender Agreement.  There was no testimony elicited at the

evidentiary hearing to suggest that any employees other than the seven claimants continued to work at the

facility after May 8, 2009.  The spreadsheet admitted into evidence as Exhibit 23 listed sixteen employees

of the Debtor for calendar year 2009 (see Ex. 23).  Relying upon this, it appears that the Debtor terminated

---

[14]  The cases construing this provision tend to focus on a different fact pattern and legal question than the one at bar.  "As to wages, the 'cessation of business' language 'was added to protect employees whose employer stops paying them, or pays them at a reduced rate, and goes out of business, but then waits longer than ninety days to file a bankruptcy petition.'"  In re Bodin Apparel, Inc., 46 B.R. at 559 (citation omitted).  The parties have not cited a case addressing the 507(a)(4) issue presented here.

the employment of nine employees prior to May 8, 2009.  The Court finds that though it is a close call, discharging nine of sixteen employees does not constitute "a discharge of all or substantially all" of the Debtor's employees.

The next prong of this three-prong test is whether the Debtor ceased performing its usual work during the period covered by the proofs of claim in question.  Mr. Gauthier was a very credible witness and he testified at the evidentiary hearing to the following facts.  The Debtor manufactured insulated building panels on a made-to-order basis.  The Debtor designed panels for a customer's home or commercial building, produced the panels to order, and then shipped the panels for delivery to the job site.  As of May 8, 2009, the date of the Surrender Agreement, TD Bank took possession of most of the Debtor's assets.  After May 8, 2009, Mr. Gauthier worked at the same location and continued to use the same furnishings, furniture, and supplies as he had previously used, even though those assets were then owned by TD Bank.  He obtained verbal permission from TD Bank to use the assets, and spoke specifically about this with Peter Blackmore at the Brattleboro office of TD Bank.  Mr. Gauthier testified that TD Bank understood certain work needed to take place to finish the business of the Debtor.  There was no testimony as to whether Mr. Gauthier requested any written permission from TD Bank to use the business assets, but he did testify that he did not receive written permission.  Although the production line was not in operation as of May 8, 2009, Mr. Gauthier and other Claimants continued to perform their regular office work.  Mr. Gauthier (i) worked on financial reports that were potentially necessary for the windup of the Debtor, (ii) assisted the attorney working on the litigation against BASF (a supplier whom the Debtor alleged had supplied it with faulty chemicals), (iii) supervised the work of Lynn Bailey, the office manager, (iv) supervised the performance of F. Douglas Anderson who was tasked with selling product and maintaining relationships with customers, and (v) took phone calls and spoke with customers.  He and the other Claimants had two objectives with respect to their continued office work: first, there was a reason to stay in business because there were financial reports that needed to be prepared; and second, they were trying to maintain customer confidence because they believed it was possible the Debtor could buy the assets back if a large project came in, and they were engaged in discussions with a potentially large customer.  During May 2009, Mr. Gauthier did not know for certain whether the Debtor's assets were going to be sold to a third party who would operate the business.

Lynn Bailey testified that during the month of May 2009, she entered payables, answered the telephone, prepared tax returns, helped run reports for the BASF litigation, and gathered information for a possible bankruptcy filing.  Ms. Bailey further testified that during May 2009, the remaining staff performed office work using the equipment the Debtor had turned over to TD Bank, and there were no

13

employees in the production area of the Debtor's facility.

    F. Douglas Anderson testified that during May 2009 he continued to make and answer telephone inquiries, to deal with brokers and architects, produce requested estimates, to answer technical questions, and to be in contact with both existing and potential new customers of the Debtor.  Mr. Anderson testified that he continued working because there were two possibilities for turning the Debtor around: first, there could be a very large project that would mean a large infusion of cash, and second, someone could buy the company.  Mr. Anderson testified that he knew that the Debtor's assets had been turned over to TD Bank, but he assumed there was still a chance of a contract coming in that could change the course of events, and that in the past the Debtor's financials had ebbed and flowed, and he knew first hand that one big contract could make all the difference.  Mr. Anderson further testified that the estimates admitted into evidence as Exhibits 25 through 29 were estimates he prepared after the Debtor's turnover of assets to TD Bank (see Ex. 25–29).  According to his testimony, the Debtor continued its standard operating procedures during this time: though Mr. Anderson prepared many estimates, the Debtor did not manufacture a product until there was a signed contract.

    James Kirschner, the architectural designer and draftsman, testified that during May 2009 he was on-call and available to address any technical issues that arose, and to do this he checked in with Mr. Anderson each Monday to ascertain if there was any issue that required his attention.

    The testimony of Elizabeth Glynn, counsel for TD Bank, corroborated the Claimants' testimony with regard to the cessation of production.  She testified that when she visited the Debtor's plant early one morning, sometime in early May 2009, she saw a dimly-lit factory area where the equipment was not in use and saw no employees working in the factory area.  She provided no testimony contrary to the Claimants' with regard to their role, work, or activity at the Debtor's business location during the month of May 2009.

    Based upon the testimony of Mr. Gauthier, Ms. Glynn, and Ms. Bailey, the Court finds that there was no production at the facility during the period in question.  However, Mr. Gauthier, Mr. Anderson, and Mr. Kirschner credibly testified that the Debtor designed, marketed, and sold panels in addition to producing them, and Ms. Bailey and Messrs. Gauthier, Anderson, and Kirschner credibly testified that the Claimants continued to perform non-production work on behalf of – and in the name of – the Debtor, including work on the design, marketing, and sale of panels, during May 2009.  Although Mr. Gauthier's work on financial reports that were potentially a windup of the Debtor was not the "usual work" of the Debtor, his involvement in the litigation against BASF, his supervision of the work of Ms. Bailey and Mr. Anderson, and his interactions with customers did constitute the usual work of the Debtor.  Similarly,

14

although Ms. Bailey's work preparing documents the Debtor would need in the event of a bankruptcy filing was not the "usual work" of the Debtor, the tasks she performed as the office manager, including entering payables, answering telephone calls, preparing tax returns, and running reports for the BASF litigation, were the usual work of the Debtor.  The Court further finds that Mr. Anderson's sales and marketing efforts during the month of May was part of the "usual work" of the Debtor, and that Mr. Kirschner's on-call availability as architectural designer and draftsman during his vacation also falls squarely within the "usual work" of the Debtor.  Thus, based upon the testimony of these witnesses, the Court finds that the Debtor did not cease performing its usual work before June 1, 2009.

Lastly, the Court turns to the continuity of operations versus liquidation prong of the test. Mr. Gauthier, Ms. Bailey, Mr. Anderson, and Mr. Kirschner each credibly testified that they began working for World Panel (the Debtor's successor) during the first week of June 2009.  The Trustee elicited no testimony to demonstrate that World Panel or any other entity operated the business prior to June 1, 2009.  Based on the record, and the testimony regarding the work the Claimants performed on behalf of the Debtor during May 2009, the Court finds that the Claimants were working for the ongoing business of the Debtor through May 31, 2009, and that there was no effort to liquidate the Debtor business prior to June 1, 2009.

Applying this three-prong test leads Court to conclude that the Claimants were working for the Debtor through May 31, 2009, and that there was no cessation of the Debtor's business through that date.  The Court therefore overrules the cessation of business portion of the Trustee's objection to the Motion with respect to the claims of Claimants F. Douglas Anderson, James Kirchner, David Gauthier, and Lynn Bailey.  The priority claims filed by Mr. Anderson and Ms. Bailey are allowed and their motions for early disbursement are granted.[15]  Mr. Kirschner's priority claim is allowed except to the extent of the $28.29 disallowed above, and his motion for early disbursement of his priority claim is granted as to the allowed amount of $4,709.25.  Mr. Gauthier's priority claim is allowed except to the extent of the $5,673.09 disallowed above, and his motion for early disbursement of his priority claim is granted as to the allowed claim in the amount of $2,490.05 (the $8,163.14 requested less the disallowed $5,673.09).

Claimant Teresa Winter is addressed separately because she filed a claim that includes a time period subsequent to May 31, 2009.  She asserts that $2,327.11 of her claim is entitled to priority status, based upon an attached spreadsheet titled "employee wages owed as of 5/11/09."  Part of her claim is for wages in the amount of $453.39 for the period ending June 4, 2009 (see claim # 48-1, pp. 1, 4).  The Court

---

[15] Since the Court sustained the Trustee's objection to the claims of Mark Brosseau and John L. Kennedy based upon lack of supporting documentation, there is no need to address the cessation of operations argument portion of the Trustee's objection with respect to those two claims.

15

found above that the Claimants continued to work for the Debtor through May 31, 2009, and that there was not a cessation of the Debtor's business through that date.  Ms. Bailey and Messrs. Gauthier, Anderson, and Kirschner each testified that they began working for World Panel "during the first week of June 2009," without specifying a particular date.  The parties stipulated that World Panel entered into a Sale Agreement with TD Bank for the purchase of the Debtor's assets on June 4, 2009 (see Findings of Fact ¶ 5, supra).  The Court finds that Ms. Winter has failed to sustain her burden of proof on the issue of whether she was as an employee of the Debtor for the period of June 1 through June 4, 2009.  See In re S. Side House, LLC, 451 B.R 248, 261 (Bankr. E.D.N.Y. 2011) (finding that where the objecting party has produced sufficient evidence to overcome a disputed claim's prima facie validity, the burden of proof reverts to the claimant) (internal citations omitted).  For this reason, the Court overrules in part and sustains in part the cessation of business portion of the Trustee's objection to the Motion as to Teresa Winter's claim, reduces Ms. Winter's priority claim (# 48-1) by $453.39 (which sum will instead be allowed as a general unsecured claim), and grants Ms. Winter's motion for early disbursement to the extent of her allowed priority claim in the amount of $1,873.72.

### The Trustee's Additional Objections

In his proposed conclusions of law, the Trustee raised several additional objections to the Motion not previously raised in his objection or supplemental objection before trial (doc. # 133-1; see also doc. ## 86, 101).  First, the Trustee objected to the Motion as to the claims of Lynn Bailey, James Kirschner, David Gauthier, and F. Douglas Anderson because Mr. Gauthier was president of the Debtor, Ms. Bailey was office manager, and Messrs. Kirschner and Anderson were managers, and by virtue of their positions these Claimants were unable to sustain their priority claims (doc. # 133-1, ¶ 1).[16]  Second, the Trustee objected to the Motion on the ground that each Claimant's vacation time must be reduced to a pro rata percentage based upon the alleged date of the cessation of the Debtor's business on May 8, 2009 (doc. # 133-1, ¶ 3).  Third, the Trustee objected to the Motion on the ground that none of the Claimants submitted written requests to carry over any vacation time from the previous year, as required by the employee handbook (doc. # 133-1, ¶ 4).  Finally, the Trustee objected to the Motion on the ground that none of the Claimants submitted written vacation requests, which was a pre-requisite for vacation pay and time (doc. # 133-1, ¶ 4).  The Court will not consider these arguments, as the Trustee failed to raise them in his objection or supplemental objection (see doc. ## 86, 101).[17]

---

[16] Even if this argument were timely raised, the Court would find it to be without merit.  A priority claim may be asserted by any individual employee, regardless of the capacity in which he or she was employed by the debtor.  See In re Jade West Corp., Inc., 53 B.R. 16, 17 (Bankr. D. Or. 1985).

[17] The Trustee commented in his supplemental objection that "[t]he Trustee further believes that 'vacation pay' had not accrued

16

<u>CONCLUSION</u>

For the reasons set forth above, the Court overrules in part and sustains in part the objections to the claims and Motion currently before the Court, and thus grants in part and denies in part the Motion, with the following outcomes.  Ms. Bailey's claim (# 20-2) is allowed as a priority claim in the amount of $3,628.34, Ms. Bailey's motion for early disbursement of her allowed priority claim is granted, and the Court will allow Ms. Bailey the opportunity to further amend her claim so that the amount claimed for wages comports with the supporting documentation.  Mr. Kirschner's priority claim (# 24-2) is reduced by $28.29, which amount will instead be allowed as a general unsecured claim, and Mr. Kirschner's motion for early disbursement of his priority claim is granted to the extent of his allowed priority claim in the amount of $4,709.25.  Mr. Brosseau's claim (# 25-1) is disallowed as a priority claim and allowed as a general unsecured claim; Mr. Brosseau's motion for early disbursement of his priority claim is denied. Mr. Gauthier's claim (# 46-2) is reduced by $5,673.09 (and this amount will be allowed as a general unsecured claim), Mr. Gauthier's motion for early disbursement of his allowed priority claim is granted to the extent of his allowed priority claim in the amount of $2,490.05, and the Court will allow Mr. Gauthier the opportunity to further amend his claim so that the amount of wages sought comports with the documentation attached to his proof of claim.  Ms. Winter's priority claim (# 48-1) is reduced by $453.39, which will be allowed as a general unsecured claim, and Ms. Winter's motion for early disbursement of her priority claim is granted to the extent of her allowed priority claim in the amount of $1,873.72.  Mr. Kennedy's claim (# 55-1) is disallowed as a priority claim and allowed as a general unsecured claim, and Mr. Kennedy's motion for early disbursement of his priority claim is denied.  Mr. Anderson's claim (# 62-2) is allowed as a priority claim in the amount of $4,172.18, Mr. Anderson's motion for early disbursement of his allowed priority claim is granted, and the Court will allow Mr. Anderson the opportunity to further amend his claim.

This memorandum constitutes the Court's findings of fact and conclusions of law.

September 29, 2011                                    Colleen A. Brown
Burlington, Vermont                                  United States Bankruptcy Judge

---

for these employees" (doc. # 101, p. 2), and included as an outstanding issue in the joint notice of evidentiary hearing "whether the Debtor's employment policies were such that the Claimants are entitled to vacation pay" (doc. # 123, ¶ 6(2)).  The Trustee introduced no evidence and introduced no legal argument on either issue.  These two statements alone are insufficient to constitute a viable objection.  A party must articulate, develop, and support an argument for the Court to consider it.